IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFF MCGEE BRAGG,
      Petitioner,

vs.                         Case No.: 3:15cv318/MCR/EMT

JULIE JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). Respondent filed an answer and relevant portions of the state court record (ECF No. 16). Petitioner filed a reply (ECF No. 22).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of

the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 16).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-1172, with one count of grand theft auto and one count of driving while license revoked pursuant to habitual offender (Ex. A at 1).  The State subsequently amended the information to add a count of criminal mischief (*id.* at 3).  On May 24, 2012, Petitioner signed a Sentence Recommendation, pursuant to which he stated his intention to enter a plea of nolo contendere to all three counts, each of which carried a maximum sentence of five years in prison, with the understanding that (1) Petitioner would be adjudicated guilty of all counts, and (2) Petitioner would be sentenced to concurrent terms of 48 months of probation (*id.* at 14–17).  The same day, the trial court accepted Petitioner's plea, adjudicated him guilty of all counts, and sentenced him to concurrent terms of 48

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

months of probation under the terms and conditions set forth in the Order of Probation rendered on June 12, 2012 (*id.* at 22–29).

On August 29, 2012, a warrant issued for Petitioner's arrest for violating his probation (Ex. A at 37–39).  The amended affidavit of violation of probation ("VOP") charged Petitioner with the following eight violations: (1) failure to report to probation officer, (2) new law violation—battery (upon Petitioner's mother), (3) new law violation—battery (upon Petitioner's brother), (4) failure to complete substance abuse evaluation/counseling, (5) failure to complete community service hours, (6) failure to complete job searches, (7) failure to complete "anti-theft" evaluation/counseling, and (8) absconding from probation supervision (*id.* at 45–50).

At a hearing on December 18, 2012, Petitioner admitted to all of the violations as charged except the two new law violations (i.e., the battery charges involving Petitioner's mother and brother) and absconding from probation supervision (violations 2, 3, and 8) (Ex. A at 63–72).

The court held a hearing on violations 2, 3, and 8.  The State presented two witnesses at the VOP hearing, Michael Robbins, Petitioner's probation officer, and Deputy Michael Williams (Ex. A at 72–88).   The prosecutor announced that

Petitioner's mother and brother were served with subpoenas to testify, but they failed to appear (*id.* at 64).

Probation Officer Robbins testified that while Petitioner was on probation, Petitioner called him on the telephone and stated that he had "gotten in trouble" at his residence (Ex. A at 75). Officer Robbins testified that Petitioner told him that he "thought some charges would be coming in the near future" (*id.*).

Deputy Williams testified that he was dispatched to 470 North 72nd Avenue on July 17, 2012, at approximately 9:30 p.m. (Ex. A at 77–78). Deputy Williams testified that he made contact with Reatha Bragg, and observed that she was "very bloody" and had two cuts on her nose (*id.* at 78). Deputy Williams identified photographs of Mrs. Bragg, and testified that the photographs fairly and accurately represented the injuries that he observed on that day (*id.*). The photographs were admitted into evidence without objection (*id.* at 79, 119–20).[2] Deputy Williams testified that Mrs. Bragg explained what happened that day, and she completed a sworn written statement (*id.* at 79). The State offered Mrs. Bragg's sworn statement into evidence (*id.*). Defense counsel objected as follows:

---

[2] The photographic and documentary evidence is part of the state court record (Ex. A at 119–29).

MS. REECE [defense counsel]:  Well, it's a statement that's made by a person that's not present, Your Honor.  And I understand hearsay is permitted in a violation of probation hearing, but it's a photograph of a statement that was supposedly written.  The victim is not present to verify the circumstances that she wrote this statement.

THE COURT:  Is there any case law on this?  Is this sort of like a [Crawford v.] Washington [, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)] what's the hearsay, you know what I'm talking about?

MS. REECE:  Well, my understanding the violation of probation hearings [sic] is that although hearsay is certainly permitted, it's not the—the basis for the violation cannot be solely based on hearsay alone. There must be something additional.

THE COURT:  Well, with his testimony that he saw her nose bloody and bleeding profusely, and I've got the picture.  And I guess this [Mrs. Bragg's sworn statement] is going to say her son punched her I think is what I'm about to hear, right?  So is there—Crawford is what I'm thinking.  Is there a Crawford issue that I need to be aware of?

MR. FERENCHICK [the prosecutor]:  I don't believe so, Judge. Hearsay is admissible.  Hearsay is not the sole basis of the violation.

THE COURT:  I mean, I think hearsay is admissible and I mean there's proof here that he—the burden again is preponderance of the evidence.  I mean, beyond a reasonable doubt, if there's a trial there definitely is a Crawford issue.  Witness doesn't show up, they can't prove their case beyond a reasonable doubt.  But here preponderance that I think he probably hit his mom, I've just seen a picture.  He just said she was very bloody.  I'm probably about to see a statement she said he did it.  I think we're—

MS. REECE:  Your Honor, I mean, my concern at this point is still there's—it's all hearsay that we have at this point.  There's nothing other than a photograph of that, plus hearsay.

THE COURT: The witness, his direct testimony was that he saw her very bloody. I mean, that's direct testimony. I mean, I understand your argument. And I know you're doing your best for your client, but he's—again, this is not going well for him. . . . I'm going overrule your objection. I'm going to see what the written statement says.

(Ex. A at 79–81).

Deputy Williams identified a copy of Reatha Bragg's written statement that she provided to him on July 17, 2012, and testified that he administered an oath prior to her providing the statement (Ex. A at 81–82). The court admitted the statement into evidence (*id.* at 82, 121). Reatha Bragg's statement was the following

> I Reatha Bragg (mother) of Jeff Bragg was arguing over the fact he calls himself a father, just was granted custody of his 8 year old son today 07-17-12, but, after court Jeff, myself [sic] returned home. Jeff said he was going to work. I turned my back, Jeff just disappeared into air. The 8 year old stated dad went to work. At 1930 the son called the father's cell phone. It went straight to voice mail. At 2000 I called the cell phone to remind him he has a son here who he just was granted custody over. I called several more times. I told him on one voice mail not to show up here if he has been drinking. At 2130 Jeff walked in the front door and I began arguing with him. Jeff started calling me names like skank, whore, fucked up bitch, and then bowed up [sic] at me and the arguement [sic] heated up. I dared him to hit me and then he swung on me, hitting me in the face. At that time we both went to the ground and his father, brother [sic] got involved trying to pull us apart. I did not require no [sic] help because he was drunk and I had him by the balls. If everyone would had [sic] stayed out of it the deputys [sic] would only of [sic] called to a homicide not a disturbance. Jeff was drunk and I hated to do this to him but he cannot hold his liquor. He always plays a role in 10 feet tall bullet prof [sic].

(Ex. A at 121–22).

Deputy Williams testified that he also made contact with Jack Bragg on July 17, 2012 (Ex. A at 82).  Williams testified that Jack Bragg was "also bloody" (*id.*). Deputy Williams identified a photograph of Jack Bragg, and testified that the photograph fairly and accurately represented the injuries that he observed on that day (*id.* at 82–83).  The photograph was admitted into evidence without objection (*id.* at 83, 123).  Deputy Williams testified that Jack Bragg also provided a sworn written statement, and he identified a copy of Jack Bragg's written statement that Bragg provided on July 17, 2012 (*id.* at 83–84).  Defense counsel objected to admission of the statement on the ground that it was hearsay, and that Jack Bragg was not present for cross-examination (*id.* at 84).  The court overruled the objection (*id.*).  Jack Bragg's statement was the following, "Walked in to get him off my mother and then he punched me in the head Jeff Bragg." (*id.* at 124–25).  Deputy Williams testified that Jack Bragg was referring to Petitioner as "him" (*id.* at 84).

Deputy Williams testified that Mr. James Bragg also provided a sworn written statement on July 17, 2012 (Ex. A at 84–85).  James Bragg's statement was admitted into evidence over defense counsel's objection (on the same grounds as her objections to the admission of the statements of Reatha and Jack Bragg) (*id.* at 85–86, 126–27).

In the statement, James Bragg stated:  "Jeff came in drunk.  Me & his mother telling him stop drinking.  Act like a daddy.  He was on his cell phone.  My wife [undecipherable] knock it out of his hand.  He hit her in the face." (*id.* at 126–27).

Deputy Williams testified that while he was at the residence, the telephone rang, and Reatha Bragg identified the caller as Petitioner (Ex. A at 87).  Williams testified that Petitioner told him that he pushed his mother, and the entire family "jumped on him" (*id.*).  Deputy Williams testified that Petitioner told him that he was the victim in the situation (*id.*).  Petitioner also told Williams that he feared he would be arrested, and that he was going to "fight law enforcement" if he was going to be arrested (*id.*).  Deputy Williams testified that Petitioner contacted him later that night, after Williams had prepared an affidavit in support of a warrant for Petitioner's arrest, and Petitioner again declared himself the victim (*id.* at 88).  Williams testified that Petitioner told him that he intended to return to the family's residence and "shoot the place up" (*id.* at 87).

After the State rested its case, defense counsel announced, "The only other information we have for the court is a statement made by one of the alleged victims, his mother, that's been made to—the state attorney provided to us as they're required to disclose this information." (Ex. A at 89).  The court admitted Reatha Bragg's

affidavit into evidence with no objection from the State (*id.* at 89–90, 128–29). Reatha

Bragg's statement, dated November 2, 2012, was the following:

> On the case of Jeff Bragg vs. Reatha, the entire dispute was over Jeff's children (3). We were arguing myself, my husband, when an altercation broke out. I said Jeff hit me, but I do not recall that to date. I do not wish to send him to jail. I don't think jail is the answer. I really feel he has some mental issues. That's were [sic] he needs help. Myself and Jack Bragg do not wish to persue [sic] any charges against Jeff. On the day of the incident Jeff came home after out drinking. My husband began arguing with him. He walked away playing on the cell phone. I walked over and slapped the phone out of his hand. Jeff picked up the phone and sat on the bed. I slapped it out of his hand again. My husband told him to leave and Jeff responded by tell [sic] his son Anthony to get some clothes, he's going with him. I began arguing, Anthony is going now [sic] where with you. Jeff started out the door when I hit him in the head with the house phone. Jeff then turned and bowed up [sic] at me. I dared him to him me. I don't recall him hitting me. I could of [sic] blocked it out, or I just blacked out, but I still cannot remember if he hit me. I do not want to put him in jail. He has (2) daughters in Bayminnet [sic], AL who needs [sic] him despartley [sic].

(Ex. A at 128–29).

At the conclusion of the VOP hearing, the State conceded that there was

insufficient evidence as to violation 8, and the court dismissed that violation (Ex. A

at 90). As to the remaining contested violations, the new law violations charged in

violations 2 and 3, the court ruled as follows:

> I understand everyone's arguments and I understand the victim statements, I mean, obviously, the worst pictures are of Ms. Bragg, the mother. I notice quite a bit of blood on her and the nose. She's quite

adamant of what occurred on that night.   Some time later she's equivocating in that she doesn't want him to go to jail so, therefore, I can't really recall what happened that night.   Obviously, these two statements taken in concert, I'm going to look at them.  I believe he hit her.  Preponderance of the evidence is he hit her and the proof is here. So, therefore, I'll adjudicate him guilty of that one.  And also his brother because I saw the pictures of the brother and the brother is pretty plain as well.  So I'll adjudicate him guilty of all except for eight because he entered the admission to the others.

(Ex. A at 92).  The court sentenced Petitioner to concurrent terms of five years in prison as to the original grand theft auto count (Count 1) and the driving with revoked license count (Count 2) (*id.* at 94–95, 101–09).  The court sentenced Petitioner to a term of five years in prison on the criminal mischief count (Count 3), to run consecutive to the sentence on Count 1 (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-6069 (Ex. A at 113).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. B).  Petitioner filed a pro se initial brief (Ex. C). The First DCA affirmed the judgment per curiam without written opinion on November 25, 2013, with the mandate issuing December 23, 2013 (Ex. D).  Bragg v.

State, 127 So. 3d 504 (Fla. 1st DCA 2013) (Table).  Petitioner did not seek further review.

On May 6, 2014, Petitioner filed a Motion for Correction of Illegal Sentence in the state circuit court, pursuant to Rule 3.800(b) of the Florida Rules of Criminal Procedure (Ex. E at 1–17).  The circuit court summarily denied the motion in an order rendered August 28, 2014 (*id.* at 18–19).  Petitioner appealed the decision to the First DCA, Case No. 1D14-3599 (Ex. E at 31–32, Ex. F).  The First DCA affirmed the lower court's decision per curiam without written opinion on November 13, 2014, with the mandate issuing December 9, 2014 (Ex. G).  Bragg v. State, 151 So. 3d 1232 (Fla. 1st DCA 2014) (Table).

On October 31, 2014, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–23).  The circuit court summarily denied the motion in an order rendered February 9, 2015 (*id.* at 26–29).  Petitioner appealed the decision to the First DCA, Case No. 1D15-1372 (Ex. I at 76, Ex. J).  The First DCA affirmed the lower court's decision per curiam without written opinion on June 23, 2015, with the mandate issuing July 21, 2015 (Ex. L).  Bragg v. State, 169 So. 3d 1164 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on July 13, 2015 (ECF No. 1).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The

appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied—the state court adjudication resulted in a decision
> that (1) "was contrary to . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2) "involved
> an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the
> "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this court on a
> question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S.

156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme

Court has instructed that on any issue raised in a federal habeas petition upon which

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by
Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer)
in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in
part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter,
Ginsburg, and Breyer.

there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions." Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct.

362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light

of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S.

Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697

n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not

presented to state court in determining whether its decision was contrary to federal

law).  "In determining whether a state court's decision represents an unreasonable

application of clearly established federal law, a federal court conducting habeas

review 'may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill

v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at

411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d

624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state

court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291

(citing Richter).  Under § 2254(d), a habeas court must determine what arguments or

theories supported or could have supported the state court's decision, and then ask

whether it is possible that fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of the Supreme Court.

*See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court

may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C.

§ 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").    The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless

the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One:  "Ineffective assistance of trial counsel violation [sic] of Sixth Amendment, and in violation of compulsory process, and due process of equal protection to [sic] obtain witnesses in favor of Petitioner."

B.    Ground Two: "Ineffective assistance of trial counsel in violation of Sixth Amendment, and in violation of Confrontation Clause of the United States Constitution."

Petitioner alleges that after his mother provided her written statement to Deputy Williams, she provided the second written statement to the prosecutor, which partially recanted her initial statement (ECF No. 1 at 4–8).  Petitioner further alleges that while he was detained in jail awaiting the VOP hearing, both his mother and his brother told him over the telephone that (1) he was not the person who injured his mother, (2) Petitioner's brother was the person who injured their mother, after their mother attempted to intervene in Petitioner's brother's attempt to hit Petitioner, and (3) Petitioner was acting in defense of himself and his children when his brother became violent.  Petitioner contends defense counsel was ineffective for failing to either compel the appearances of his mother and brother at the VOP hearing, or request a

continuance to secure their appearances.  Petitioner asserts that if his mother and brother had been compelled to appear, their testimony would have established that he did not commit the batteries, and that he acted in self-defense.  Petitioner contends that counsel's failure to compel his mother and brother's appearances, or seek a continuance, deprived him of his right to confront his accusers.  He argues that counsel's alleged errors resulted in the court's basing its determination of guilt on photographs and hearsay.  Petitioner asserts he raised both ineffective assistance of trial counsel ("IATC") claims in his Rule 3.850 motion (*id.* at 6–9).

Respondent appears to concedes that Petitioner exhausted Grounds One and Two in the state courts (ECF No. 16 at 3–10).  Respondent contends the state courts adjudicated the merits of the IATC claims, and correctly and reasonably applied clearly established federal law in doing so (*id.*).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the

proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.

As to the prejudice prong, he Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u>

for a state court to reject an ineffectiveness claim for failing to prove prejudice by a

preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the

particular decisionmaker," as the court should presume that the judge or jury acted

according to law.  <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a

conviction, the question is whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

### 2.    Federal Review of State Court Decision

Petitioner raised both IATC claims in his Rule 3.850 motion (Ex. I at 1–9).

Petitioner submitted both of his mother's sworn statements (which were also admitted

into evidence at the VOP hearing) in support of his motion (*id.* at 11–12, 18–19).  The

state circuit adjudicated the claims as follows:

> Defendant is now claiming that counsel was ineffective by not
> calling his mother, Reatha Bragg, and his brother, Jack Bragg, to testify
> at the hearing.  In order to prevail on a claim of ineffective assistance of
> counsel, Defendant must show both deficient performance by counsel
> and resulting prejudice from the deficient performance.  <u>Strickland v.
> Washington</u>, 466 U.S. 668, 686 (1984).  In order to demonstrate
> prejudice under <u>Strickland</u>, the defendant must show that there is a
> "reasonable probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different."

At the hearing, Defendant admitted to the allegations contained in count I and counts IV–VII. He denied, however, committing the two batteries against his mother and brother. According to Defendant, his attorney should have called Ms. Bragg and Jack Bragg to testify that he had not committed a battery. Defendant claims in his motion he was the victim and was merely defending himself while being attacked by his brother and mother.

At the hearing, Deputy Michael Williams said that he was dispatched to the home of Retha [sic] Bragg on July 17, 2012. When he arrived, the deputy said he saw that Ms. Bragg had a bloody face and cuts on her nose. Ms. Bragg completed a sworn statement to the deputy explaining that Defendant had struck her in the face. Jack Bragg also had a bloody face according to Deputy Williams. Jack Bragg told the deputy that Defendant had punched him in the head.

The Court also considered a subsequent written statement from Ms. Bragg at Defendant's VOP hearing. In her second statement, Ms. Bragg said she did not recall Defendant striking her. The Court evaluated both statements and ultimately found that the charge had been proven by a preponderance of the evidence. Jack Bragg, the Court notes, never submitted a written recantation.

Even had Ms. Bragg and Jack Bragg testified at the hearing that Defendant had not committed a battery against them, the Court would still have accepted their original statements over any subsequent recantation. The Court also finds that Defendant would have been found in violation of probation based on the other allegations which he did not dispute. As noted, Defendant admitted to violating his probation based on count I and counts IV through VII as alleged in the amended affidavit. Since Defendant cannot show that the outcome of the proceeding would have been different based on counsel's alleged error, his claim must be denied.

(Ex. I at 27–28) (footnotes omitted).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. L).

"Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000)).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Reasonableness is assessed objectively, measured "under prevailing professional norms," <u>Strickland</u>, 466 U.S. at 688, and includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time."  *Id.* at 689; *see also* <u>Hannon v. Sec'y, Dep't of Corr.</u>, 562 F.3d 1146, 1151 (11th Cir. 2009) ("The standard we apply in assessing the first prong is that of a reasonable attorney, not a paragon of the bar."); <u>Williams v. Head</u>, 185 F.3d 1223, 1236 (11th Cir. 1999) ("'[I]n retrospect, one may always identify shortcomings,' but perfection is not the standard of effective assistance."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958, 960 (11th Cir. 1992) ("Most important, we must avoid second-guessing counsel's performance. . . .  Nothing is so easy as to be wise after the event. . . .  A lawyer can almost always do something more in every case.  But the Constitution requires a good deal less than maximum performance.").  As the Eleventh Circuit said:

> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. . . .  The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight.

<u>Chandler</u>, 218 F.3d at 1316–17 (quotations and citation omitted).  In other words, federal habeas courts recognize that "the trial lawyers, in every case, could have done

something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled."  *Id.* at 1313 (quotations omitted).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

Here, the state court reasonably concluded that Petitioner failed to show a reasonable probability that the outcome of the VOP proceeding would have been different if defense counsel had presented in-person testimony from Reatha and Jack Bragg.  With regard to Reatha Bragg, the VOP court considered the statements that she made in her second sworn statement (the alleged "recantation") and credited Ms. Bragg's initial sworn statement over her second one.  Petitioner failed to show that Ms. Bragg's live testimony at the VOP hearing would have been more favorable to his defense than her written "recantation."

Further, it was not unreasonable for defense counsel to forgo presenting Ms. Bragg's live testimony, because presenting doing so would have subjected her to cross-examination by the prosecutor.  Reatha Bragg's second statement did not completely recant her initial statement that Petitioner hit her; instead, her second statement included statements that were inconsistent with her initial statements (her second affidavit stated that she did not remember if Petitioner hit her), and it added facts suggesting that if Petitioner hit her, he was justified in doing so.  Additionally, Reatha Bragg's second statement revealed a motivation to change her story, i.e., she did not want Petitioner to go to jail.  So if defense counsel had presented Reatha's live testimony, the prosecutor could have impeached the credibility of her "recantation"

by cross-examining her about the inconsistencies in her statements and her motivation to fabricate the "recantation."

With regard to Jack Bragg (Petitioner's brother), Petitioner did not present the state court with any reliable evidence as to the content of his brother's testimony if he had testified in person at the VOP hearing.  Therefore, Petitioner's assertion that Jack Bragg would have recanted his prior written statement is purely speculative.  Such speculative assertions are insufficient to show deficient performance or prejudice under Strickland.  *See* Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

Additionally, as the state court found, the VOP conviction was not based solely upon the new law violations (i.e., the batteries against Reatha and Jack Bragg).  Petitioner admitted that he committed five other violations of his probation, including failure to report to his probation officer, failure to complete the substance abuse evaluation/counseling, failure to complete community service hours, failure to complete job searches, and failure to complete an "anti-theft" evaluation/counseling.

Moreover, defense counsel's failure to compel the attendance of Reatha and Jack Bragg at the VOP hearing (or seek a continuance in order to do so) did not constitute acquiescence to a violation of Petitioner's rights under the Due Process Clause or the Confrontation Clause.  In defense counsel's objections and closing

argument, she argued not only that the written witness statements were inadmissible, but that the statements, even considered with the photographs, were legally insufficient to support a VOP conviction for committing new law violations (i.e., the batteries charged in violations 2 and 3) (*see* A at 79–86, 91–92).

To the extent Petitioner contends defense counsel was ineffective for failing to assert his rights under the Confrontation Clause, the transcript of the VOP hearing demonstrates that the trial court construed defense counsel's objection to admission of the written statements as asserting a Confrontation Clause (or "Crawford") objection.  Further, admission of the written statements in the VOP hearing did not violate the Confrontation Clause.  Years prior to Petitioner's VOP hearing in 2012, the Supreme Court of Florida had held that the right of confrontation under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), did not apply to VOP proceedings.  *See* Peters v. State, 984 So. 2d 1227 (Fla. 2008) (Crawford does not apply to probation or community control revocation hearings, because they are not tantamount to criminal prosecutions for Sixth Amendment confrontation clause purposes); *see also* Jackson v. State, 931 So. 2d 1062 (Fla. 4th DCA 2006).  Additionally, the Eleventh Circuit held, albeit in unpublished opinions, that Crawford does not apply in revocation hearings.  *See*  United State v. Garcia–Hernandez, 389

F. App'x 894, 900 (11th Cir. 2010); United States v. Johnson, 349 F. App'x 387, 388–89 (11th Cir. 2009); United States v. Geathers, 297 F. App'x. 885, 886 (11th Cir. 2008); United States v. Spence, 151 F. App'x 836, 838 (11th Cir. 2005); United States v. Zayas, 146 F. App'x 346, 350 (11th Cir. 2005);  Unitd States v. Morris, 140 F. App'x 138, 141 (11th Cir. 2005); *see also, e.g.*, Jones v. Crews, No. 4:09cv496/MMP/MD, 2013 WL 1278979, at *11–12 (N.D. Fla. Feb. 1, 2013, *Report and Recommendation Adopted by* 2013 WL 1248238 (N.D. Fla. Mar. 27, 2013). Similarly, every other federal circuit court reaching this issue has found Crawford to be inapplicable to parole or probation revocation hearings.  *See* United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005); United States v. Aspinall, 389 F.3d 332, 342–43 (2nd Cir. 2004), *abrogated on other grounds*, United States v. Fleming, 397 F.3d 95 (2nd Cir. 2005); United States v. Kirby, 418 F.3d 621, 627–28 (6th Cir. 2005); United States v. Martin, 382 F.3d 840, 845 (8th Cir. 2004); United States v. Hall, 419 F.3d 980, 985–86 (9th Cir. 2005).  Therefore, defense counsel was not ineffective for failing to press the Confrontation Clause issue.

Petitioner failed to demonstrate that the state court's adjudication of Grounds One and Two was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of Strickland. Therefore, Petitioner

failed to demonstrate he is entitled to federal habeas relief on Ground One or Ground Two.

   C.   <u>Ground Three</u>:  "State's failure to provide and compel victim/witness to appear at violation of probation hearing as subpoenaed and that [sic] recantation testimony of the victim/witnesses in the State's possession who had favorable evidence is a violation of *Brady* principles as annunciated in *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) stands [sic] in violation of the Fifth and Fourteenth Amendment [sic] to the United States Constitution by denying Petitioner use of that favorable evidence."

Petitioner argues that the State's failure to present in-person testimony of Reatha and Jack Bragg at the VOP hearing constituted a <u>Brady</u> violation (ECF No. 1 at 9–11).  Petitioner alleges the prosecutor knew prior to the VOP hearing that Reatha Bragg had provided "recantation testimony" (i.e., her November 2, 2012 affidavit). Petitioner alleges that if the State had presented Reatha and Jack Bragg's in-person testimony, they would have testified that Jack became violent and accidentally injured Reatha while attempting to assault Petitioner, and that Petitioner was acting in defense of himself and his children.  Petitioner also appears to argue that the State's presenting only the written declarations of Reatha and Jack Bragg violated <u>Crawford v. Washington</u>.

   Respondent contends that Petitioner did not present a <u>Brady</u> claim to the state courts, and is now procedurally barred from doing so (ECF No. 16 at 10).  Respondent

additionally contends that notwithstanding Petitioner's failure to exhaust the claim, it is without merit, because the defense was obviously aware, prior to the VOP hearing, of the alleged recantations of the witnesses, as evidenced by the fact that defense counsel admitted Reatha Bragg's alleged recantation into evidence (*id.* at 10–11).

In Petitioner's reply, he asserts that he raised the <u>Brady</u> claim in his Rule 3.850 motion by quoting the following statement made by defense counsel at the VOP hearing, "The only information we have for the Court is a statement by one of the alleged victims, his mother.  That's been made to the State's Attorney provided to us as they're required to disclose this information." (ECF No. 22 at 4).  Petitioner also alleges that even though defense counsel knew about the "recantation" evidence prior to the VOP hearing, it was not disclosed to Petitioner himself (*id.*).  Petitioner alleges that if he had been aware of it prior to the hearing, he would have contacted his mother and brother to have them appear at the VOP hearing (*id.* at 4–5).

The state court record demonstrates that Petitioner did not fairly present, in either his direct appeal, his Rule 3.800(b) motion, or his Rule 3.850 motion, a due process claim based upon <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (*see* Exs. C, Ex. E, I).  Therefore, the claim is unexhausted.

Notwithstanding Petitioner's failure to exhaust, the claim should be denied on the merits.   *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").   The Supreme Court has long held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.  A Brady claim has three components:  "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Allen v. Sec'y, Florida Dep't of Corr., 611 F.3d 740, 745–46 (11th Cir. 2010).

Here, Petitioner admits, and the transcript of the VOP hearing demonstrates, that the alleged recantation testimony was known by the defense prior to the VOP hearing; indeed Reatha Bragg's alleged "recantation" affidavit was admitted into evidence at the VOP hearing.  Further, Petitioner admitted in his § 2254 petition that his mother and brother recanted their initial statements to him during a telephone conversation during his pre-hearing detention (*see* ECF No. 1 at 5). Therefore,

Petitioner was aware of the existence of the "recantation" evidence prior to the VOP hearing.  Petitioner failed to satisfy the suppression element of the Brady standard; therefore, he is not entitled to relief on his <u>Brady</u> claim.

To the extent Petitioner asserts a violation of <u>Crawford v. Washington</u>, the claim was exhausted by Petitioner's presenting it on direct appeal (*see* Ex. C).  The First DCA rejected the claim in a per curiam affirmance (Ex. D).  For the reasons discussed *supra*, the state court's adjudication was not contrary to or an unreasonable application of <u>Crawford</u> or any other clearly established federal law, since the Supreme Court has not extended <u>Crawford</u> to VOP or similar proceedings.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Three.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 1<u>st</u> day of August 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**